UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MERRILL, KIET LE, and BENJAMIN HILL,<br><br>Plaintiffs,<br><br>v.<br><br>MENTAL HEALTH SYSTEMS, a California corporation; THE TRAINING CENTER, a California corporation; JEAN R. ALMONOR, an individual; and DOES 1 THROUGH 50, inclusive,<br><br>Defendants. | Case No.: 3:16-cv-01090-GPC-JMA<br><br>**ORDER GRANTING IN PART AND DEFERRING IN PART DEFENDANTS MENTAL HEALTH SYSTEMS AND THE TRAINING CENTER'S MOTIONS TO DISMISS AND GRANTING PLAINTIFFS LEAVE TO AMEND AND LEAVE TO CONDUCT LIMITED JURISDICTIONAL DISCOVERY**<br><br>**[ECF Nos. 16, 17.]** |

Before the Court are Defendant Mental Health Systems, Inc. and Defendant Training Center Ephesians 4:11–16's motions to dismiss and motions to strike Plaintiffs David Merrill, Kiet Le, and Benjamin Hill's First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). ECF No. 16. The motions have been fully briefed. ECF Nos. 21–24. The Court held a hearing on the motions on September 9, 2016. ECF No. 25. Lisa Damiani, Esq. appeared on behalf of Plaintiffs; Lara P. Besser, Esq. and Marissa Marxen, Esq. appeared on behalf of Defendants. *Id.* Having reviewed Defendants' motions and the applicable law, and for the reasons set

1

forth below, the Court **GRANTS IN PART** and **DEFERS IN PART** Defendants' motions to dismiss.

### BACKGROUND

Defendant Mental Health Systems, Inc. ("MHS") is a non-profit corporation that operates community-based programs for individuals seeking mental health services in San Diego County. FAC ¶ 6, ECF No. 12. MHS coordinates the Substance Abuse Services Coordinating Agency ("SASCA"), a state-funded program that provides substance abuse treatment services for parolees after release from incarceration. *Id.* ¶ 13. MHS receives funding from county, state, and federal sources. *Id.* ¶ 6. Defendant Training Center Ephesians 4:11–16 ("TC") is a non-profit, faith-based organization that operates residential treatment programs in San Diego. *Id.* ¶ 7.

Plaintiffs David Merrill, Kiet Le, and Benjamin Hill (collectively, "Plaintiffs") were placed on parole upon release from California state prison. *Id.* ¶ 12. As a term of release on parole, Plaintiffs, who suffer from addiction, were required to participate in the SASCA program for six months. *Id.* ¶¶ 11, 14. MHS assigned Plaintiffs to TC and monitored them throughout their stay at the facility, sending MHS staff to meet with Plaintiffs at TC every other week. *Id.*

Plaintiff Le arrived at TC on or about March 7, 2014, and Plaintiffs Merrill and Hill arrived at TC early April 2014. *Id.* ¶ 16. TC assigned each Plaintiff to an individual bedroom and supplied Plaintiffs with a bed and linens. *Id.* ¶ 20. TC required Plaintiffs to comply with strict institutional rules and to remain on facility premises unless excused. *Id.* ¶¶ 17–18. During a detoxification period known as "blackout time," Plaintiffs were not permitted to leave TC without supervision for the first thirty days after arrival at the facility. *Id.* ¶ 32.

On or about mid-April 2014, Plaintiffs began accumulating bites and sores all over their bodies. *Id.* ¶¶ 24–25. Due to the bites, Plaintiffs suffered itching, pain, sleep deprivation, anxiety, scarring, and decreased ability to concentrate on their treatment during the day. *Id.* ¶¶ 25–26, 31. Some of the bites became infected and led Plaintiffs to

develop fevers as high as 104 degrees Fahrenheit. *Id.* ¶ 31. At the end of April 2014, Plaintiffs discovered bedbugs in their rooms and alerted TC immediately. *Id.* ¶¶ 27–28. TC declined to relocate Plaintiffs to other rooms and required Plaintiffs to remain in their assigned rooms. *Id.* ¶¶ 29–30. Plaintiffs reported their injuries to MHS during MHS's bimonthly visits, and Plaintiff Merrill called MHS directly to inform MHS about the bedbug problem at TC. *Id.* ¶ 7.

Plaintiffs allege that they requested medical assistance during the blackout period for their injuries, but TC, which did not have medical facilities on-site, did not allow Plaintiffs to visit a doctor off premises and did not bring a physician onsite to treat Plaintiffs during the thirty-day period. *Id.* ¶¶ 33–34. Plaintiffs further allege that after weeks of complaining about their injuries to both TC and MHS, a pest control service arrived at TC and sprayed two of Plaintiffs' rooms. *Id.* ¶¶ 35–41. However, the bedbug problem resurfaced, and Plaintiffs resumed complaining to TC and MHS about their injuries. *Id.* ¶¶ 42–44. The pest control service returned to TC and sprayed Plaintiffs' rooms. *Id.* ¶ 45. This treatment, too, did not eradicate the problem. *Id.* ¶ 46. While Plaintiffs requested TC to implement more aggressive treatments to combat the bedbug infestation, TC declined, stating that such treatments were too expensive. *Id.* ¶ 47. Plaintiffs allege that Defendants were aware that spraying the rooms would not eradicate the infestation. *Id.* ¶ 66.

Plaintiffs Merrill and Hill left TC around mid-June 2014, about two months after enrollment. *Id.* ¶ 49. Plaintiff Le left TC on or about September 3, 2014, about six months after enrollment. *Id.* Plaintiffs allege that the bedbug problem did not abate during the duration of Plaintiffs' stay, and that they contracted "hundreds" of bites. *Id.* ¶ 50–51. After Plaintiff Merrill left TC, MHS staff allegedly informed him that MHS was terminating funding for his continued treatment due to his being a "troublemaker" and "complaining too much about the bed bug infestation" at TC. *Id.* ¶ 51–52. Plaintiffs allege that they continued to suffer scarring and anxiety after leaving TC. *Id.* ¶ 53.

Plaintiffs' FAC asserts multiple state law claims and one federal law claim against

1 all Defendants: (1) negligence, (2) premises liability under Cal. Civ. Code § 1714(a), (3) intentional infliction of emotional distress ("IIED"), (4) violation of federal civil rights guaranteed by the Eighth Amendment under 42 U.S.C. § 1983, (5) breach of implied warranty of habitability, (6) nuisance, (7) battery, and (8) violation of state and federal constitutional rights under Cal. Civ. Code § 52.1.

Defendant MHS removed the case to this Court on May 5, 2016. ECF No. 1. Defendants MHS and TC filed separate motions to dismiss and motions to strike on May 12, 2016 and May 26, 2016, respectively. ECF Nos. 3, 8. On June 2, 2016, Plaintiffs filed a FAC. ECF No. 12. The Court accordingly denied as moot Defendants' motions to dismiss the original complaint. ECF No. 13. Defendant MHS moves to dismiss Plaintiffs' third, fourth, seventh, and eighth claims under Rule 12(b)(6) and moves to strike Plaintiffs' request for punitive damages and attorney's fees under Rule 12(f). ECF No. 16. Defendant TC moves to dismiss Plaintiffs' third, fourth, fifth, sixth, seventh, and eighth claims under Rule 12(b)(6) and moves to strike Plaintiffs' request for punitive damages and eighth claim under Rule 12(f). ECF No. 17.

## LEGAL STANDARD

### I.   Fed. R. Civ. Pro. 12(b)(6)

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.* In reviewing a Rule 12(b)(6) motion, the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

## DISCUSSION

### I.  Plaintiffs' § 1983 Claim

Plaintiffs bring a claim under 42 U.S.C. § 1983 against Defendants, alleging that Defendants violated Plaintiffs' Eighth Amendment rights. *See* FAC ¶¶ 73–83. TC contends that Plaintiffs fail to allege facts establishing that Defendants acted under the color of state law, and both Defendants contend that Plaintiffs fail to state an Eighth Amendment violation. *See* ECF No. 16-1 at 8–11; ECF No. 17-1 at 10–17.

A claim under § 1983 requires: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a person (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (internal quotation marks omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal citation and quotation marks omitted). Conduct that amounts to state action under the Fourteenth Amendment is action under color of state law for purposes of § 1983. *See id.* at 49; *see also Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 309 (2001) ("[S]tate action is an element of a § 1983 claim."). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *Lugar*, 457 U.S. at 937).

"When addressing whether a private party acted under color of law, [courts] start with the presumption that private conduct does not constitute governmental action."

5

*Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). "[S]tate action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). The Ninth Circuit has used a number of tests to determine "whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test."[1] *Rimac v. Duncan*, 319 F. App'x 535, 537 (9th Cir. 2009) (citing *Franklin v. Fox,* 312 F.3d 423, 445 (9th Cir. 2002)).

A court's state action analysis "begins by identifying the specific conduct of which the plaintiff complains." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812–13 (9th Cir. 2010) (quoting *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 51); *see also Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982) ("Faithful adherence to the 'state action' requirement . . . requires careful attention to the gravamen of the plaintiff's complaint."). "It is important to identify the function at issue because an entity may be a State actor for some purposes but not for others." *Lee v. Katz*, 276 F.3d 550, 555 n.5 (9th Cir. 2002) (internal quotation marks and alteration omitted). Here, the specific conduct of which Plaintiffs complain centers on Defendants' handling of the bedbug infestation. Plaintiffs specifically complain that Defendants denied them pest-free premises, delayed taking remedial measures, denied them medical care during the blackout period, failed to transfer them to another facility, and chose not to implement more effective bedbug eradication methods. *See* FAC ¶¶ 73–83.

---

[1] "The joint action test for state action is met where private persons are willful participants in joint activity with the State or its agents that effects a constitutional deprivation." *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997) (internal quotation marks and alteration omitted). Here, the joint action test is not relevant because Plaintiffs do not allege that Defendants willfully participated in joint activity with the State to effect a constitutional deprivation.

//// 

## A. State Compulsion

"State action may be found under the state compulsion test where the state has 'exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State.'" *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997) (quoting *Blum*, 457 U.S. at 1004). Here, the state required Plaintiffs to undergo addiction treatment as a mandatory parole condition, but the state did not exercise "coercive power" or provide "such significant encouragement" to Defendants that Defendants' conduct in handling Plaintiffs' injuries and the bedbug infestation "must in law be deemed to be that of the State." *Id.* The State neither "compel[led]" nor was "directly involved in that decision." *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52. Accordingly, Plaintiffs fail to allege that Defendants' actions amounted to state action under the state compulsion test.

## B. Public Function

For private conduct to qualify as state action under the public function test, the private actor must exercise powers that are "traditionally the *exclusive* prerogative of the State." *Rendell-Baker*, 457 U.S. at 842; *see also Johnson*, 113 F.3d at 1118 (stating the same). Although Plaintiffs contend that the state delegated its authority over parolees to Defendants, *see* ECF No. 22 at 18, Plaintiffs do not allege that the provision of substance abuse treatment to parolees is traditionally an exclusive function of the state, *c.f. Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (determining that "providing mental health services has not been a power which has traditionally been exclusively reserved to the state").

Plaintiffs cite to *Frazier v. Aramark*, No. CIV S-10-0610 EFB P, 2011 WL 3847188 (E.D. Cal. Aug. 30, 2011), *see* ECF No. 22 at 18, but *Frazier* is distinguishable. In *Frazier*, the court held that a private contractor which supplied all meals to inmates of a county jail acted under color of state law. *See id.* at *2. The contested activity—failure to provide food satisfying minimum caloric requirements—constituted state action

because the state had "completely delegate[d]" its legal duty to supply inmates' meals over to a private contractor. *Id.*; *see also West*, 487 U.S. at 56 (holding that private physician's conduct constituted state action because the state, which "bore an affirmative obligation to provide adequate medical care to [prisoner]," completely delegated that duty to a private doctor); *Lewis v. Mitchell,* 416 F.Supp.2d 935, 946–47 (S.D. Cal. 2005) (private company that merely provided ingredients to prison, which prison employees then used to prepare meals for inmates, was not a state actor). Here, no analogous delegation occurred.[2] Accordingly, Plaintiffs fail to allege that Defendants' actions amounted to state action under the public function test.

## C.  Governmental Nexus

Private conduct may be state action if there is "such a close nexus between the State and the challenged action" that the individual's conduct "may be fairly treated as that of the State itself." *Brentwood Acad.*, 531 U.S. at 295–96 (internal citations and quotation marks omitted); *see also Kuba v. Sea World, Inc.*, 428 F. App'x 728, 731 (9th Cir. 2011) ("[S]tate action arises from pervasive entwinement to the point of largely overlapping identity." (internal citation omitted)). Plaintiffs broadly allege that MHS worked with the San Diego County Parole Department to assign and provide treatment to parolees through the SASCA program, *see* FAC ¶¶ 13, 75, and that Defendants exerted control over Plaintiffs by virtue of the threat of parole revocation, *see id.* ¶¶ 14, 74. However, that the state authorized Defendants to coordinate and provide substance abuse treatment to parolees does not convert Defendants' conduct into state action. *See*

---

[2] At the motion hearing, Plaintiffs analogized Defendants' provision of residential treatment to the operation of halfway houses. However, federal courts have held that privately-operated halfway houses are not state actors for purposes of § 1983 claims. *See, e.g.*, *Graves v. Narcotics Serv. Counsel, Inc.*, 605 F. Supp. 1285, 1287 (E.D. Mo. 1985) (holding that a nonprofit halfway house that provided plaintiff drug and alcohol rehabilitation treatment as a condition of plaintiff's probation was not a state actor); *McWhirt v. Putnam*, No. 06-4182-CV-CSOW, 2008 WL 695384, at *7 (W.D. Mo. Mar. 12, 2008) (holding that a private community-based agency operating a halfway house and providing substance abuse treatment to inmates, parolees, and non-inmates was not a state actor); *Kelly v. N.J. Dep't of Corr.*, No. CIV.A. 11-7256 PGS, 2012 WL 6203691, at *7 (D.N.J. Dec. 11, 2012) (holding that the private operator of a halfway house and community release programs was not a state actor).

*Rendell-Baker*, 457 U.S. at 832–37 (insufficient nexus between private school and the state, where nearly all of the school's students were referred by public school committees or the drug rehabilitation division of the state's mental health department; the school agreed to carry out individualized plans developed by the committees for referred students; and the state reimbursed the school for referred students' tuition expenses); *Smith v. Devline*, 239 F. App'x 735, 735–36 (3d Cir. 2007) (holding that a private residential treatment center to which plaintiff was paroled did not act under color of state law); *Gross v. Samudio*, 630 F. App'x 772, 779 (10th Cir. 2015) (holding that private sex offender treatment programs' decisions not to admit plaintiff, resulting in revocation of plaintiff's parole, did not amount to action under color of state law). Moreover, Plaintiffs' allegations do not give rise to an inference that "such a close nexus" existed between the State and the *specific* challenged conduct in this case—Defendants' actions regarding the bedbug infestation and Plaintiffs' injuries. *Brentwood Acad.*, 531 U.S. at 295. Defendants' enforcement of internal protocol, maintenance of facility premises, choice of pest containment measures, and failure to provide Plaintiffs with medical assistance cannot fairly be attributed to the State. *See Rendell-Baker*, 457 U.S. at 841–42 (finding no state action where the government had no involvement in the specific challenged action).

Plaintiffs allege that MHS received government funding and that the SASCA program was likewise funded by the state. *See* FAC ¶¶ 6, 13. However, state assistance to a private party in the form of financial aid will not convert private conduct into state action. Even acts by private corporations that derive their primary source of business from government contracts "do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–41 (1982); *see also Blum*, 457 U.S. at 1011.

Because Plaintiffs fail to allege facts establishing that Defendants' challenged conduct constituted action under the color of state law, the Court **GRANTS** Defendants' motions to dismiss Plaintiffs' § 1983 claim.

////

## II. Supplemental Jurisdiction Over Remaining State Law Claims

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (internal citation and quotation marks omitted). A district court has discretion to decline to exercise supplemental jurisdiction over remaining state law claims if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *see, e.g.*, *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 962 (9th Cir. 2014) ("In as much as only state claims remain, the district court may decide whether to continue to exercise supplemental jurisdiction over the state claims or send them back to state court, as appropriate."). Here, the Court is dismissing the claim over which it had original subject matter jurisdiction at an early stage in the litigation. At this time, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(3).

Accordingly, the Court **DEFERS** ruling on Defendants' motions to dismiss Plaintiffs' state law claims and Defendants' motions to strike.

## III. Leave to Amend and Conduct Limited Jurisdictional Discovery[3]

Under Rule 15(a), a party may amend a pleading once as a matter of course within 21 days of service, or if the pleading is one to which a response is required, 21 days after service of a responsive pleading or a motion under Rule 12(b)(e) or (f). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Here, because more than 21 days have passed since the filing of the responsive pleadings, and Defendant did not consent to the

---

[3] Although Plaintiffs did not seek leave to amend or to conduct jurisdictional discovery in their moving papers, Plaintiffs made oral motions at the motion hearing for leave to amend and to conduct jurisdictional discovery on the issue of whether Defendants acted under color of state law.

1  amendment, Plaintiffs requires leave from this Court to file the proposed amended
2  answer.
3        Granting or denying leave to amend is in the discretion of the Court, *Swanson v.
4  United States Forest Serv.,* 87 F.3d 339, 343 (9th Cir. 1996), though leave should be
5  "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In exercising this
6  discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate
7  decision on the merits, rather than on the pleadings or technicalities." *United States v.
8  Webb,* 655 F.2d 977, 979 (9th Cir. 1981). Consequently, the policy to grant leave to
9  amend is applied with extreme liberality. *Id.*
10       Plaintiffs stated at the motion hearing that if they are permitted to conduct limited
11 discovery as to the question of whether Defendants acted under color of state law, then
12 they may be able to allege sufficient facts to state a claim under § 1983. The Court
13 **GRANTS** Plaintiffs leave to amend. Because the Court's jurisdiction over this case
14 hinges on Plaintiffs' § 1983 claim, the Court **GRANTS** Plaintiffs leave to conduct
15 jurisdictional discovery limited to the specific issue of whether Defendants acted under
16 color of state law. Discovery is to be conducted and concluded within 60 days of this
17 Order. All discovery disputes are to be directed to the Hon. Jan M. Adler.

## CONCLUSION

Based on the reasoning above, the Court (1) **GRANTS** Defendants' motions to dismiss Plaintiffs' § 1983 claim, (2) **GRANTS** Plaintiffs leave to amend their § 1983 claim, (3) **GRANTS** Plaintiffs leave to conduct limited discovery, and (4) **DEFERS** ruling on Defendants' motions to dismiss and motions to strike Plaintiffs' remaining state law claims.

**IT IS SO ORDERED.**

Dated: September 13, 2016

*[signature]*
Hon. Gonzalo P. Curiel
United States District Judge